IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CR-176-D-2

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| MIGUEL ANGEL GIERBOLINI, | ) | |
| | ) | |
| Defendant. | ) | |

On May 14, 2020, Miguel Angel Gierbolini ("Gierbolini") moved for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 216, 219]. On July 8, 2020, Gierbolini moved through counsel for such release [D.E. 219] and filed a memorandum in support [D.E. 220]. On July 22, 2020, the United States responded in opposition [D.E. 227] and filed some medical records of Gierbolini [D.E. 228]. On August 3, 2020, Gierbolini replied [D.E. 231]. As explained below, the court denies Gierbolini's motion.

On March 8, 2019, pursuant to a written plea agreement, Gierbolini pleaded guilty to conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine and a quantity of heroin. See [D.E. 131]. On August 8, 2019, the court held Gierbolini's sentencing hearing. See [D.E. 167]. At the hearing, the court adopted the facts set forth in the Presentence Investigation Report ("PSR"). See [D.E. 168]; Fed. R. Crim. P. 32(i)(3)(A)–(B). The court calculated Gierbolini's total offense level to be 33, his criminal history category to be I, and his advisory guideline range to be 135 to 168 months' imprisonment. See [D.E. 168]. After granting the government's downward departure motion and thoroughly considering all relevant factors under

18 U.S.C. § 3553(a), the court sentenced Gierbolini to 84 months' imprisonment. See id.; [D.E. 167]. Gierbolini did not appeal.

On December 21, 2018, the First Step Act went into effect. See First Step Act, Pub. L. No. 115-391, 132 Stat. 5194, 5249 (2018). Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission ("Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially restates section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75%

2

of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—

   (I) suffering from a serious physical or medical condition,

   (II) suffering from a serious functional or cognitive impairment, or

   (III) experiencing deteriorating physical or mental health because of the aging process,

   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

   (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

   (C) Family Circumstances.—

   (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

   (ii) The incapacitation of the defendant's spouse or registered partner

3

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). Nevertheless, section 1B1.13 provides applicable policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See, e.g., United States v. Clark, No. 1:09-cr-336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished). In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., id.; Dinning v. United States, No. 2:12-cr-84, 2020 WL 1889361, at *2 (E.D. Va. Apr. 16, 2020) (unpublished).

---

> when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

4

Gierbolini is age 29 and seeks compassionate release pursuant to section 3582(c)(1)(A)(i). In support, Gierbolini relies on the "family circumstances" policy statement in application note 1(C) to U.S.S.G. § 1B1.13. See [D.E. 220] 3. Gierbolini asserts that his mother struggles to care for his two children because she suffers from osteoarthritis, anxiety, and a various of other ailments. See [D.E. 216] 2; [D.E. 220-1] 1. Gierbolini also relies on the "other reasons" policy statement in application note 1(D) to section 1B1.13. See [D.E. 216, 220]. Specifically, Gierbolini cites the COVID-19 pandemic and hip and elbow problems. See [D.E. 216] 2; [D.E. 220] 1, 3–4.

As for whether Gierbolini has exhausted his administrative remedies under 18 U.S.C. § 3582(c)(1)(A), on May 20, 2020, Gierbolini submitted a compassionate release request to the warden. See [D.E. 231-1] 1. Gierbolini never received a response. See [D.E. 231] 1. Accordingly, the court finds that Gierbolini exhausted his administrative remedies and addresses Gierbolini's claims on the merits. Cf. United States v. Alam, 960 F.3d 831, 833–34 (6th Cir. 2020).

Regarding "family circumstances," the court determines that Gierbolini's family circumstances are not extraordinary or compelling and do not justify release. See U.S.S.G. § 1B1.13 cmt. n.1(C). Section 1(C)(i) requires "[t]he death or incapacitation of the caregiver of the defendant's ... minor children." U.S.S.G. § 1B1.13 cmt. n.1(C)(i). See, e.g., United States v. Lisi, 440 F.Supp.3d 246, 252 (S.D.N.Y. 2020) ("The animating principle of the [f]amily [c]ircumstances category is that there exists an extraordinary and compelling reason for release when the defendant has a close family member who is completely unable to care for himself or herself or for whom the defendant would be the only available caregiver."). The primary caregiver for Gierbolini's two children is not deceased or incapacitated. Although Gierbolini contends that his wife and his mother are having difficulty caring for his two children, he does not argue that his wife or mother cannot provide care. See [D.E. 216] 2–3; [D.E. 220] 3. Furthermore, Gierbolini's mother watches the two

5

children while his wife works, and his mother is not their sole caregiver. See [D.E. 231-1] 1; [D.E. 220] 3. Thus, the court rejects Gierbolini's argument.

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic is an extraordinary circumstance consistent with application note 1(D). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). However, Gierbolini's vague elbow and hip problems are not reflected in his medical records. See [D.E. 228]. Moreover, the section 3553(a) factors counsel against reducing Gierbolini's sentence. See United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); United States v. Ruffin, Nos. 16-CR-729 (VM), 17-CR-136 (VM), 2020 WL 3547772, at *3 (S.D.N.Y. June 30, 2020) (unpublished); Clark, 2020 WL 1874140, at *3–8. Gierbolini engaged in serious criminal conduct in a drug trafficking organization over several years. See PSR [D.E. 142] ¶¶ 13–35. As a high-volume drug dealer in Fayetteville, North Carolina, Gierbolini conservatively distributed at least 1 kilogram of heroin and 100 kilograms of cocaine. See id. Gierbolini also possessed a firearm during his drug trafficking activities. See id. at ¶¶ 25, 27, 35. Furthermore, releasing Gierbolini would undermine the purpose of his sentence. Nonetheless, Gierbolini has taken productive steps while incarcerated. Cf. Pepper v. United States, 562 U.S. 476, 480 (2011). Having considered the entire record, the steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Gierbolini's arguments, the government's response, and the need to punish Gierbolini for his criminal behavior, to incapacitate Gierbolini, to promote respect for the law, to deter others, and to protect society, the court declines to grant Gierbolini's motions for compassionate release.

6

In sum, the court DENIES Gierbolini's motion for compassionate release [D.E. 216, 219].

SO ORDERED. This 6 day of November 2020.

                                                JAMES C. DEVER III
                                                United States District Judge

7

Case 5:18-cr-00176-D   Document 242   Filed 11/09/20   Page 7 of 7